-PS-O-

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ADIL FAUZI MOUSA NEKOLAS,

                    Plaintiff,

                                                          DECISION AND ORDER
          -v-                                             06-CV-0214A(Sc)

WILLIAM CLEARY, Director Field Office,
CHARLES MULE, ALBERTO GONZALEZ,
MICHAEL CHERTOFF, BRENDA BAILEY,

                    Defendants.

_____

## INTRODUCTION

Plaintiff, Adil Fauzi Mousa Nekolas, who has been detained since August 2004 at the Buffalo Federal Correctional Facility pending removal pursuant to a final order of removal issued by the Bureau of Immigration Appeals, has filed this *pro se* action seeking relief under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 398 (1971) (Docket No. 1).[1]  He has requested permission to proceed *in forma pauperis* and filed a signed Authorization (Docket No. 4).  Plaintiff claims that the defendants, Alberto Gonzalez, Attorney General of the United States, Michael Chertoff, Secretary of the Department of Homeland Security, William Cleary, Field Officer Director, Department of Homeland Security, Immigration and Customs Enforcement ("ICE"), Charles Mule, Facility Director, Buffalo Federal Correctional Facility, Brenda Bailey, M.D., Clinical Director, Buffalo Federal

_____

[1]Plaintiff filed his complaint on a Court-Approved Form to be used in filing complaints under 42 U.S.C. § 1983, but pursuant to the Court's obligation to liberally construe a pro se complaint, the Court construes the complaint as one under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 398 (1971), inasmuch as it seeks relief for alleged constitutional violations against various federal officials. *See Tavarez v. Reno*, 54 F.3d 109 (2d Cir. 1995).

Detention Facility, and Cpt. Parucki,[2] SIEA Officer of ICE, violated his rights (1) by illegally detaining him since August 2004 and ordering him removed from this country; (2) when, after two negative tuberculosis tests performed in August 2004 and August 2005, a third test performed in February 2006 came back positive and he then had to undergo chest X-rays; (3) when the Facility refused to release his medical records to him; and (4) when he was placed him in disciplinary segregation in February 2006. (Docket No. 1, Complaint.) For the reasons discussed below, plaintiff's request to proceed as a poor person is granted and the complaint is dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A.

## DISCUSSION

Because plaintiff has met the statutory requirements of 28 U.S.C. § 1915(a) and filed an Authorization with respect to this action, plaintiff is granted permission to proceed *in forma pauperis.* Section 1915(e)(2)(B) of 28 U.S.C. provides that the Court shall dismiss a case in which *in forma pauperis* status has been granted if the Court determines that the action (i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. In addition, 28 U.S.C. § 1915A(a) requires the Court to conduct an initial screening of "a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," *id.*, regardless of whether or not the inmate has sought *in forma pauperis* status under 28 U.S.C. § 1915.

---

[2]The caption portion of the Complaint Form does not include Cpt. Parucki as a defendant but he is identified as a defendant in the portion of the Complaint Form which asks plaintiff to identify the defendants. Accordingly, the Clerk of the Court is directed to add Cpt. Parucki to the caption of this proceeding.

In evaluating the complaint, the Court must accept as true all factual allegations and must draw all inferences in plaintiff's favor. *See King v. Simpson*, 189 F.3d 284, 287 (2d Cir. 1999). Dismissal is not appropriate "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). "This rule applies with particular force where the plaintiff alleges civil rights violations or where the complaint is submitted *pro se*." *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998). Based on its evaluation of the complaint, the Court finds that plaintiff's claims must be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) because they fail to state a claim upon which relief may be granted.

As noted, plaintiff brings this action pursuant to *Bivens,* 403 U.S. at 398. In order to state a valid claim for relief under *Bivens*, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of federal law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *See Tavarez v. Reno*, 54 F.3d 109 (2d Cir. 1995) (citing *Bivens*, 403 U.S. at 395-97); see also*, Butz v. Economou*, 438 U.S. 478, 498-501 (1978) (federal courts typically analogize *Bivens* claims with claims under 42 U.S.C. § 1983).

### A. Plaintiff's Allegations

#### 1. First Claim

Plaintiff's First Claim (Docket No. 1, Complaint, ¶ 5A, p. 5) alleges that he has been unlawfully and illegally detained since August 2004 when he entered the United States at JFK Airport in New York City, and taken into custody on "false charges of deportability." Shortly following his initial detention at JFK he was transferred to the Buffalo Federal

Detention Facility in Batavia, New York where he has been held to date.  Plaintiff was served with a Notice to Appear and Amended Notices to Appear alleging that he was inadmissable at the time of his earlier entry into the United States due to his being an alien who had previously been convicted of a crime involving moral turpitude, *see* Immigration and Nationality Act, §§ 237(a)(1)(A), 212(a)(2)(A)(i)(1), codified at 8 U.S.C. §§ 1227(a)(1)(A), 1182(a)(2)(A)(i)(1).  During his deportation or removal proceedings plaintiff applied for asylum, withholding of removal, and relief under the Convention Against Torture.  An Immigration Judge denied plaintiff's requests for relief and ordered him to be removed to Egypt, and the Bureau of Immigration Appeals affirmed the Immigration Judge's order of removal.  His requests for release pending removal have been denied by ICE and he continues to be detained pending removal to Egypt.  (Docket No. 1, Complaint and attached Exhibits.)

Petitioner's claim that he is being illegally detained pending removal is presently the subject of a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, which was initially filed in the United States Court of Appeals for the Second Circuit as a motion for release and then transferred to this Court and recharacterized as a petition for habeas corpus relief.  *Nekolas v. Department of Homeland Security*, 06-CV-0054A(Sc) (Order, Docket No. 16.)  According to the Second Circuit's Docket Sheet and orders entered in that Court, which were filed in this Court upon transfer and opening of 06-CV-0054A(Sc) (Docket No. 15), plaintiff initially commenced a habeas corpus petition in this Court challenging his final order of removal, but that petition was transferred to the Second Circuit pursuant to the REAL ID Act, Pub.L.No. 109-13, 199 Stat. 231, codified at 8 U.S.C.

4

§ 1252.[3]  Plaintiff moved for a stay of removal and release from detention in the Second

Circuit and the Second Circuit issued a stay of removal pending that Court's review of the

petition for review of the removal order.  On January 11, 2006, the Second Circuit issued

an Order which dismissed plaintiff's petition for review of the final order of removal because

it lacked an arguable basis in law or fact, and transferred to this Court plaintiff's motion for

release from detention.   (*Nekolas v. Gonzalez*, 06-CV-0054A(Ac), Docket No. 15,

Attachment # 1, Order dated January 11, 2006.)[4]

In the pending habeas corpus petition, plaintiff again argues, as he does in this

matter, that he is being unlawfully detained in violation of his constitutional rights.  Plaintiff's

claims of unlawful detention and a request for immediate release to the extent they are

raised in this *Bivens* action are simply not cognizable in this matter.  First, to the extent

plaintiff seeks to re-argue the merits of the removal order, his claims must be dismissed

because the Second Circuit has previously dismissed his petition for review of the removal

order because it lacked an arguable basis in law or fact (*Nekolas v. Gonzalez*, 05-2908,

Order, dated January 11, 2006; *Nekosas v. Department of Homeland Security*, 06-CV-

0054A(Sc), Docket No. 15, Attachment # 1), and because this Court has no jurisdiction to

---

[3]The REAL ID Act stripped the district courts of all jurisdiction over challenges to final orders of removal and ordered the transfer of all pending challenges to final orders of removal to the appropriate Court of Appeals.

[4]The documents forwarded to this Court by the Court of Appeals upon transfer do not include an order of this Court transferring a petition for habeas corpus relief to the Court of Appeals pursuant to the REAL ID Act of 2005.  One of the documents received from the Court of Appeals, dated July 29, 2005 (06-CV-0054A(Sc), Docket No. 15, Attachment # 9), is an Order of the Court of Appeals noting that Petitioner had filed a Motion for a Stay of Removal, and directing Respondents to file the certified administrative record and response to the Motion.  This Court has no record of Petitioner, under the name "Adil Fauzi Mousi Nekolas," having filed an initial petition for habeas corpus in this Court, which was then transferred to the Second Circuit.  In any event, plaintiff did have filed in the Second Circuit a petition for review of his final order of removal which was dismissed by the Second Circuit.  (*Nekolas v. Gonzalez*, 05-2908; *Nekolas v. Department of Homeland Security*, 06-CV-0054A(Sc), Docket No. 15, Attachment # 1.)

review a challenge to a final order of removal. *See* REAL ID Act, Pub.L.No. 109-13, 199 Stat. 231, codified at 8 U.S.C. § 1252. Second, to the extent plaintiff's claims herein seeks release from detention pending removal, it is a claim that is the very subject of plaintiff's habeas corpus proceeding now pending in this Court. *Nekolas v. Department of Homeland Security*, 06-CV-0054A(Sc). United States Magistrate Hugh B. Scott, to whom that matter has been referred pursuant to 28 U.S.C. § 636(b)(1)(B)-(C), recently issued a Report and Recommendation recommending that plaintiff's motion for immediate release be denied. (*Nekolas v. Department of Homeland Security*, 06-CV-0054(A)(Sc), Docket No. 25.) Accordingly, plaintiff's First Claim (Docket No. 1, Complaint, ¶ 5A, p. 5), which, liberally construed, raises a challenge to a final order of removal and plaintiff's current detention, must be dismissed.

2. Second Claim

Plaintiff's second claim for relief (Complaint, Docket No. 1, ¶ 5A, p. 6), alleges that, under the supervision of defendants Brenda Bailey, M.D., Clinical Director, an SEIA Custody Officer, presumably Capt. Parucki, and Charles Mule, Facility Director, Facility clinic employees tested plaintiff for tuberculosis on three separate occasions: August 2004, August 2005 and February 2006. The first two tests were negative but the third test was positive and, as a result, plaintiff had to undergo a chest X-ray in February 2006 to determine the progression of the disease. Plaintiff then claims that the Facility tried to conceal his medical records from him and refused to release his records to him despite numerous requests he had made[5] for them and that, after immigration officials attempted

---

[5]The Court notes that plaintiff has filed a number of pages of medical records since the filing of the complaint. (Docket No. 5.)

to remove him despite a stay of removal, which he claims was still in place as previously ordered by Second Circuit,[6] he was placed him in a Special Housing Unit ("SHU") and treated "poorly."  He states that all of this amounted to a failure to protect, a denial of access to the courts and inadequate medical treatment.

While plaintiff's complaint is legible and contains a summary of pertinent facts in support of his claims, it is inartfully pled.  The Court, however, is under an obligation to liberally construe plaintiff's claims.  *See Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) ("the pleadings of a pro se plaintiff must be read liberally and should be interpreted 'to raise the strongest arguments that they could suggest'") (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).  Plaintiff's complaint appears to raise claims alleging (1) an Eighth Amendment claim of inadequate medical care relating to the 2006 diagnosis of tuberculosis after two negative tests in 2004 and 2005; (2) a First Amendment claim of denial of access to courts as a result of the Facility's refusal to release plaintiff's medical records; and (3) a procedural due process violation in relation to being placed in disciplinary segregation after he refused to follow orders relating to the aborted attempt to effect his removal.

---

[6]An Order of the Second Circuit, dated November 29, 2005 granted plaintiff's motion for a stay of removal "pending determination of the petition for review . . . ." (*Nekolas v. Gonzalez*, 05-2908, Order, dated November 29, 2006; *Nekolas v. Department of Homeland Security*, 06-CV-0054A(Sc), Docket No. 15, Attachment # 13.)  The petition for review was denied by the Second Circuit on January 11, 2006.

### a. Personal Involvement

The Court initially finds that the only defendant who is sufficiently alleged to be personally involved in any of the constitutional violations alleged is Cpt. Parucki, who according to an Incident Report, a Review of Segregation Report, and a Disciplinary Segregation Order, which are all attached to the complaint, appears to be the Chairman of the Facility Disciplinary Panel ("FDP") that imposed a 14-day period of disciplinary segregation following plaintiff's conduct on February 28, 2006 when immigration officials tried to remove him. All other defendants are sued only in their capacities as high-level governmental officials—Gonzalez and Chertoff—or as local ICE or Correctional Facility supervisory officials–Cleary, Mule and Bailey—who had no personal involvement in the alleged constitutional deprivations. *See Ellis v. Blum*, 643 F.2d 68, 85 (2d Cir. 1981); *see, e.g., Vazquez v. Parks*, No. 02CIV1735(LAK)(HBP), 2003 WL 1442087, at *9 (S.D.N.Y. Feb. 4, 2003) ("[A] plaintiff alleging a Section 1983 or a *Bivens* claim must set forth specific and detailed factual allegations of personal involvement as opposed to bald assertions and conclusory terms.") (internal citations and quotations omitted); *France v. Coughlin*, No. 85 Civ. 6347(CBM), 1987 WL 10724 at *5 n. 3 (S.D.N.Y. May 4, 1987) (the personal involvement requirement in a *Bivens* action is identical to that required in a 1983 action.)

Plaintiff alleges in his second claim for relief that "under the supervision of Clinical Director Brendan D. Bailey, M.D., C.D.R., and the Custody Officer and Supervisors [sic] under the Facility Director Charles Mule . . ." he underwent three tuberculosis tests and that everyone at the facility concealed his medical records and refused to release them to him. (Docket No. 1, Complaint, ¶ 5A, p. 6.) Plaintiff's complaint against these supervisory

8

officials seeks to impose liability against them based solely on the doctrine of respondeat superior, which is inapplicable to claims under § 1983 and *Bivens*. *Ellis*, 643 F.2d at 85. Accordingly, the claims against Gonzalez, Chertoff, Cleary, Mule and Bailey must be dismissed as against them in their entirety for failure to state a claim upon which relief can be granted. *See* 28 U.S.C. § § 1915(e)(2)(B)(ii) and 1915A(b).

### b. Medical Claim

Assuming *arguendo* that the complaint sufficiently alleged the personal involvement of the defendants in relation to plaintiff's claim of inadequate medical care, said claim would nonetheless still be subject to dismissal under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b), because the complaint fails to allege that the defendants were deliberately indifferent to a serious medical need.  To show that prison medical treatment was so inadequate as to amount to "cruel or unusual punishment" prohibited by the Eighth Amendment, plaintiff must prove that defendants' actions or omissions amounted to "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Harrison v. Barkley*, 219 F.3d 132, 136-137 (2d Cir. 2000) ("A serious medical condition exists where 'the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.'" (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).

Plaintiff's complaint does not allege that the defendants failed to treat a serious medical condition. He alleges that he underwent two previously negative tuberculosis tests in 2004 and 2005, and then underwent a third test in 2006 which was positive. There is nothing in plaintiff's allegations that indicate the defendants chose to ignore a medical

problem that could lead to plaintiff's further injury or the infliction of pain. In fact, upon the discovery of a positive test, plaintiff states that clinic employees undertook medical procedures to check the status of the disease. Moreover, there are no allegations to support a claim that the defendants had a culpable state of mind and intended wantonly to inflict pain upon plaintiff. See Wilson v. Seiter, 501 U.S. 294, 298-99 (1991). The Court finds that the circumstances surrounding plaintiff's medical situation do not suggest any degree of deliberateness and therefore plaintiff has failed to allege a constitutional violation. Plaintiff's medical claims are hereby dismissed.

### c. Denial of Access to Courts

Plaintiff's complaint appears to allege that the defendants' conduct in concealing his medical records and refusing to release the records to him somehow interfered with his ability to file this complaint or denied him access to the courts. However, it is clear that plaintiff was not prevented from filing this complaint, which was filed within six or seven weeks of his positive tuberculosis test, nor are there any allegations that he was prevented from filing any other claims in this Court. Moreover, since the filing of the complaint in this matter, he has filed his medical records in support of his claim, and has filed a number of other documents in his pending habeas corpus petition (Nekolas v. Gonzalez, 06-CV-0054A(Sc)).

While it is true that under the Constitution a correctional facility must provide an inmate with meaningful access to the courts, Bounds v. Smith, 430 U.S. 817, 828 (1977), the mere limitation of access to legal materials, without more, does not state a constitutional claim, as "'the Constitution requires no more than reasonable access to the courts.'" Jermosen v. Coughlin, 877 F. Supp. 864, 871 (S.D.N.Y. 1995) (quoting Pickett

*v. Schaefer*, 503 F. Supp. 27, 28 (S.D.N.Y. 1980)). In order to state a constitutional claim, a plaintiff must make a showing that he has suffered, or will imminently suffer, actual harm; that is, that he was "hindered [in] his efforts to pursue a legal claim." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). *Accord Morello v. James*, 810 F.2d 344, 347 (2d Cir. 1987).

Thus, plaintiff must show that he has suffered an actual injury traceable to the challenged conduct of prison officials. A plaintiff has not shown actual injury unless he shows that a "nonfrivolous legal claim had been frustrated or was being impeded" due to the actions of prison officials. *Lewis*, 518 U.S. at 351-52. Taking plaintiff's claim as true, he "offers no facts to explain how [the denial of access to his medical records for a short period of time or the denial of access to any legal materials] prejudiced [his] ability to seek redress from the judicial system." *Smith v. O'Connor*, 901 F. Supp. 644, 649 (S.D.N.Y. 1995). Not only was plaintiff able to file his complaint within a short period of time after his first positive tuberculosis test in February 2006 and the attempt to effect the removal order, but he has continually and constantly communicated with the Court and has filed various documents in support of his claims, including his medical records, since the filing of the complaint. Thus, in addition to there being no allegations of personal involvement on the part of any of the defendants in relation to plaintiff's claim of denial of access to the courts, plaintiff's claim that he has been denied access to the courts must be dismissed because it fails to state a claim upon which relief can be granted.

### d. Due Process-Disciplinary Segregation

Plaintiff alleges that he was placed in SHU as a result of his objections to ICE's efforts to effect his removal from this country and that he had been treated poorly while in

SHU. He does not allege anything which would rise to the level of a cruel and unusual punishment (conditions of confinement) claim under the Eighth Amendment claim and the complaint can only be construed as alleging some type of procedural due process claim in relation to being placed in SHU for 14 or 30 days.[7]  Plaintiff does not, however, allege how he was denied due process nor does he allege that his discipline involved anything other than a 14-day term in SHU.  All he alleges is that he was placed in disciplinary segregation; the attachments to the complaint indicate that the only defendant involved in said segregation, Cpt. Parucki, was the Chairman of the FDP that imposed 14-day penalty of disciplinary segregation.

In order to establish a procedural due process violation, a prisoner  must establish that the "deprivation ... is atypical and significant and the state has created the liberty interest by statute or regulation." *Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997); *see also Sandin v. Conner,* 515 U.S. 472, 484 (1995) (a prisoner's liberty interest is implicated by prison discipline, such as SHU confinement, only if the discipline "imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."); *Tellier v. Fields*, 280 F.3d 69 (2d. Cir. 2000) ("In order to determine whether Tellier [a federal prisoner] has stated a claim for procedural due process violations, we must determine: ... (1) whether the plaintiff had a protected liberty interest in not being confined ... and, if so, (2) whether the deprivation of that liberty interest occurred without due process of law.") (internal quotations and citations omitted); *Frazier v. Coughlin,* 81 F.3d 313, 317 (2d Cir. 1996) (per curiam) (of course, a prisoner must first show that the state

---

[7]Copies of reports attached to the complaint indicate that the Facility's Disciplinary Panel imposed a sanction of 14-days in disciplinary segregation and that it was recommended that the sanction be 30-days.

created a liberty interest, by statute or regulation, before he can show that the interest was infringed).  As noted, the only "hardship" alleged by plaintiff was that he was placed in disciplinary segregation for 14-days (or, at most, 30 days).  (Docket No. 1, Complaint, Attachments—Incident Report, Review of Segregation Report, and Disciplinary Segregation Order.)

A confinement of 14 (or even 30) days, without more, has been held not to be an "atypical and significant" hardship which implicates a liberty interest thereby entitling plaintiff to procedural due process.  The Second Circuit's cases have established the following guidelines for use by district courts in determining whether a prisoner's liberty interest was infringed: "Where the plaintiff was confined for an intermediate duration—between 101 and 305 days—'development of a detailed record' of the conditions of the confinement relative to ordinary prison conditions is required.  *Palmer v. Richards*, 364 F. 3d 60, 64-65 (2d Cir. 2004) *(quoting Colon v. Howard,* 215 F.3d 227, 232 (2d Cir. 2000)); *accord Sims v. Artuz,* 230 F.3d 14, 23 (2d Cir. 2000) ("[W]e have characterized segregative sentences of 125-288 days as relatively long, and thus necessitating specific articulation of ... factual findings before the district court could properly term the confinement atypical or insignificant." (citations and internal quotation marks omitted)).  "In the absence of a detailed factual record, we have affirmed dismissal of due process claims only in cases where the period of time spent in SHU was exceedingly short—less than the 30 days that the *Sandin* plaintiff spent in SHU—and there was no indication that the plaintiff endured unusual SHU conditions."  *Palmer*, 364 F.3d at 65-66 (*citing Hynes v. Squillace*, 143 F.3d 653, 658-59 (2d Cir. 1998) (per curiam) (21 days in keeplock); *Arce v.*

13

*Walker,* 139 F.3d 329, 335-36 (2d Cir. 1998) (18 days in SHU); *Frazier,* 81 F.3d at 317 (12 days in SHU).

As noted, plaintiff alleges only that he was "sentenced" to a disciplinary segregation of 14-days. He does not allege anything with respect to "unusual" conditions of confinement in SHU other then that he was treated "poorly." Based on the Second Circuit's "guidelines" as set forth in *Palmer,* 364 F.2d at 64-66, plaintiff has failed to state a claim inasmuch as his period of SHU disciplinary confinement was less than 30 days and there are no allegations that his conditions of confinement were, in any way, atypical or significant in relation to the the ordinary incidents of prison life. Accordingly, plaintiff's due process claim must be dismissed.[8]

### CONCLUSION

Plaintiff has met the statutory requirements of 28 U.S.C. § 1915(a) and filed an Authorization with respect to the filing fee. Accordingly, plaintiff's request to proceed *in forma pauperis* is granted and, for the reasons discussed above, the complaint is dismissed with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A. Plaintiff is forewarned that his right to pursue further relief in federal court at public expense will be

---

[8]While the usual practice is to allow leave to replead a deficient complaint, *see* Fed.R.Civ.P. 15(a), *see also Ronzani v. Sanofi, S.A.,* 899 F.2d 195, 198 (2d Cir. 1990), such leave may be denied where amendment would be futile, *see Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir. 1993) (per curiam) ("Where it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend."). Plaintiff's allegations in his Second Claim simply do not rise to the level of cognizable constitutional claims, and leave to replead would be futile because it is not that the plaintiff's allegations lack factual detail or are unintelligible, but rather that they fail to state an actionable constitutional claim under *Bivens.* Assuming the facts are true, as the Court must, plaintiff's claims of inadequate medical care, denial of access to the courts and a denial of due process do not rise to the level of constitutional violations pursuant to the standards set forth above.

greatly curtailed if he has three actions or appeals dismissed under the provisions of 28 U.S.C. §§ 1915(e)(2)(B) and 1915A.  *See* 28 U.S.C. § 1915(g).

The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and leave to appeal to the Court of Appeals as a poor person is denied.  *Coppedge v. United States*, 369 U.S. 438 (1962).  Further requests to proceed on appeal as a poor person should be directed, on motion, to the United States Court of Appeals for the Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

## ORDER

IT HEREBY IS ORDERED, that plaintiff's request to proceed *in forma pauperis* is granted;

FURTHER, that the Clerk of the Court is directed to add "Cpt. Parucki" to the caption of this proceeding

FURTHER, that the complaint is dismissed with prejudice; and

FURTHER, that leave to appeal to the Court of Appeals as a poor person is denied.

SO ORDERED.

Dated:     May  19 , 2006
           Rochester, New York

_____
CHARLES J. SIRAGUSA
United States District Judge

15